UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUHALLAH HARRISON,<br><br>Plaintiff,<br><br>v.<br><br>MANDEEP SINGH,<br><br>Defendant. | Case No. 21-cv-05431-JST<br><br>**ORDER DENYING PLAINTIFF'S REQUEST FOR LEAVE TO AMEND COMPLAINT; DENYING PLAINTIFF'S REQUESTS FOR INJUNCTIVE RELIEF; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 25, 32, 35, 36 |

Plaintiff, an inmate housed at Correctional Training Facility ("CTF"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that Salinas Valley State Prison ("SVSP") doctor Singh failed to treat his shoulder pain, in violation of the Eighth Amendment. ECF Nos. 14, 17. This order addresses (1) Plaintiff's request for leave to amend his complaint to add more defendants and a claim of retaliation, ECF No. 36; (2) Plaintiff's motion for injunctive relief requesting that the Court order SVSP to stop denying Dr. Lameer's request that Plaintiff receive a nerve conduction test, ECF No. 32; (3) Plaintiff's motion for injunctive relief requesting that the Court order Defendant's counsel to contact SVSP and tell SVSP to release Plaintiff from CTF restrictive housing, transfer Plaintiff back to SVSP, and stop correctional officials from retaliating against him; and requesting that the Court award him $25,000 in punitive damages for his stay in restrictive housing, ECF No. 35; and (4) Defendant Singh's motion for summary judgment, ECF No. 25.

/ / /

/ / /

**DISCUSSION**

**I.   Plaintiff's Request for Leave to Amend Complaint (ECF No. 36)**

Plaintiff has requested leave to amend his complaint to add more defendants. Plaintiff alleges that SVSP correctional officials have retaliated against him for filing this action by placing him in administrative segregation so that they would not have to remove from C-Yard and from Plaintiff's housing unit the officer who is trying to derail this action. Plaintiff seeks to amend the complaint to seek relief for these acts of retaliation. Plaintiff states that he put the SVSP warden on notice that SVSP staff is retaliating against him, and the warden has not responded. *See generally* ECF No. 36.

Plaintiff's request for leave to amend the complaint is DENIED for the following reasons.

First, Plaintiff has not attached a proposed amended complaint as required by N.D. Cal. L.R. 10-1. N.D. Cal. L.R. 10-1 provides that any party seeking to file an amended pleading must reproduce the entire proposed pleading and may not incorporate any part of a prior pleading by reference.

Second, it appears that Plaintiff's proposed amendment would be futile. The proposed amendment would likely violate the joinder requirements set forth in Fed. R. Civ. P. 20. Fed. R. Civ. P. 20(a)(2) provides that all persons "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The upshot of these rules is that "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In this action, Plaintiff has alleged that defendant Singh was deliberately indifferent to his serious medical needs. Plaintiff's retaliation claims, however, appear to involve different correctional officials and arise out of a different occurrence than the alleged failure to provide constitutionally adequate medical care. If Plaintiff wishes to sue correctional officials other than defendant Singh for their alleged retaliatory acts, he must file a separate action. The Clerk is directed to send Plaintiff two copies of the court's civil

1  rights complaint form.

2  **II.    Plaintiff's Requests for Injunctive Relief and Punitive Damages (ECF Nos. 32, 35)**

3      **A.    Legal Standards for Requests for Injunctive Relief**

4      The Prisoner Litigation Reform Act of 1995 ("PLRA") restricts the power of the court to grant prospective relief in any action involving prison conditions. *See* 18 U.S.C. § 3626(a). Section 3626(a)(2) permits the court to enter a temporary restraining order or preliminary injunction "to the extent otherwise authorized by law" but requires that such an order "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." *See* 18 U.S.C. § 3626(a)(2). The court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id.* "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (noting that such remedies are extraordinary, and not granted as of right). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). "The Ninth Circuit weighs these factors on a sliding scale, such that where there are only 'serious questions going to the merits'—that is, less than a 'likelihood of success on the merits'—a preliminary injunction may still issue so long as 'the balance of hardships tips sharply in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (emphasis in original)). Even where the balance tips sharply in the plaintiff's favor, however, the plaintiff must still make the threshold showing of likely success on the merits or a serious legal question. *See Leyva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) ("[E]ven certainty of irreparable harm has never *entitled* one to a stay.") (emphasis in original). In addition, the issuance of a preliminary injunction is at the discretion of the district court. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The standards for issuing a temporary restraining order and a preliminary injunction

3

are "substantially identical." *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

### B.     ECF Nos. 32, 35

Plaintiff has filed two motions for injunctive relief—ECF Nos. 32 and 35. In ECF No. 32, filed while Plaintiff was housed at Salinas Valley State Prison, Plaintiff requests that the Court order Salinas Valley State Prison to "stop interfering with Plaintiff['s] outside physician orders and grant whatever orders order[ed] by the physician in charge[] of Plaintiff['s] care Dr. Lameer." ECF No. 32. In ECF No. 35, filed after Plaintiff was moved to Correctional Training Facility, Plaintiff requests that the Court order Defendant's counsel to contact SVSP and tell SVSP to immediately release Plaintiff from CTF restrictive housing unit, transfer Plaintiff back to SVSP, and stop the retaliation against Plaintiff; and demands $25,000 in punitive damages for his wrongful stay in restrictive housing. Plaintiff claims that he was transferred away from SVSP and then placed in CTF's restrictive housing in retaliation for filing this action and for filing a grievance against Lt. Bielanski's staff in or around late 2023. *See generally* ECF No. 35.

Defendant Singh opposes ECF No. 32 on the following grounds. Defendant Singh argues that the Court does not have authority to grant the relief sought because the Court does not have jurisdiction over Salinas Valley State Prison, a nonparty to this action; and because the Court lacks subject matter jurisdiction to grant the requested relief because there is no nexus between Plaintiff's requested relief and the alleged Eighth Amendment violation at issue in this action. ECF No. 34. Defendant Singh has not filed an opposition to ECF No. 35.

The Court DENIES the requests for a temporary restraining order ("TRO") and preliminary injunction ("PI") in ECF Nos. 32 and 35 for the following reasons.

First, the injunctive relief sought in ECF Nos. 32 and 35 does not relate to the dispute being litigated. "[T]here must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Pacific Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). There is a sufficient nexus if the interim order "would grant 'relief of the

4

same character as that which may be granted finally.'" *Id.* (citation omitted); *see, e.g., id.* at 636-38 (district court properly denied plaintiff's request for an injunction to prevent HIPAA violation, where plaintiff had not asserted a claim for a HIPAA violation). The amended complaint alleges an Eighth Amendment violation for deliberate indifference to Plaintiff's serious medical needs, whereas the injunctive relief requests allege a First Amendment retaliation claim. The factual allegations and legal claim underlying the requests for injunctive relief are distinct from the factual allegations and legal claims in the operative complaint and would not be the proper basis for interim relief. *Pacific Radiation Oncology, LLC.*, 810 F.3d at 633 (plaintiff not entitled to injunctive relief based on claims not pled in complaint because "court's equitable power lies only over the merits of the case or controversy before it.").

Second, the only defendant in this action is SVSP doctor Singh. Fed. R. Civ. P. 65(d) provides that an injunction is binding only on parties to the action, their officers, agents, servants, employees and attorneys and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d). Neither SVSP nor the correctional officials allegedly retaliating against Plaintiff are parties to this action, or in active concert or participation with defendant Singh. Defendant's counsel's representation of Plaintiff does not render her an agent of SVSP for the purposes of the injunctive relief sought, and Defendant's counsel does not have the authority to order SVSP to take action.

The Court therefore DENIES Plaintiff's requests for injunctive relief as set forth in ECF Nos. 32 and 35 because the Court lacks subject matter jurisdiction over the relief sought and lacks personal jurisdiction over SVSP. *See Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.").

III. **Defendant's Motion for Summary Judgment**

A. **Legal Standard for Summary Judgment Motion**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case.

5

1  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor. *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020). If, as to any given material fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). However, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

**B.     Legal Standard for Eight Amendment Medical Needs Claim**

Deliberate indifference to a prisoner's serious medical needs violates the Eighth

6

Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See McGuckin*, 974 F.2d at 1059. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. *See McGuckin*, 974 F.2d at 1060. Under the relevant standard, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844 ("A prison official's duty under the Eighth Amendment is to ensure reasonable safety") (internal quotation marks and citation omitted). To be deliberately indifferent, a prison official must have a subjective "state of mind more blameworthy than negligence," akin to criminal recklessness. *Id.* at 835, 839-40.

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to

7

establish deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. *Toguchi*, 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. *See Toguchi*, 391 F.3d at 1060-61.

### C.      Factual Background

The following facts are undisputed unless otherwise noted.

Plaintiff first complained of pain in his right shoulder in or about 2015. On April 2, 2015, Plaintiff had an x-ray of his right shoulder. In or about 2017, Plaintiff had a steroid injection, which helped with the pain. ECF No. 25-1 at 7, 10, 16, 17.

From September 2018 to November 2019, Dr. Singh was Plaintiff's primary care provider. ECF No. 25-1 at 1-5 ("Singh Decl.") ¶¶ 1, 4. During this time period, defendant Singh met with Plaintiff five times: September 11, 2018; and March 26, July 15, September 9, and November 5, 2019. After November 9, 2019, another physician took over as Plaintiff's primary care physician. Singh Decl. ¶ 4.

The Court reviews below Plaintiff's medical treatment from September 2018 to May 2023.

**Defendant Singh's First Evaluation of Plaintiff.** In September 2018, defendant Singh became Plaintiff's primary care provider. On September 11, 2018, defendant Singh examined Plaintiff for the first time. Defendant Singh conducted a physical examination of Plaintiff's right arm, which indicated no tenderness in the right shoulder and normal range of motion in the right shoulder and that Plaintiff was able to elevate his right arm 180 degrees. Defendant Singh diagnosed Plaintiff as having rotator tendinitis in the right shoulder. Plaintiff reported doing jumping jacks and pull-ups for an hour daily. Plaintiff reported that a cortisone shot a year prior helped with the right shoulder pain and requested another cortisone shot. Per Plaintiff's request, Defendant Singh requested that medical staff schedule Plaintiff for a steroid injection for his right shoulder. Singh Decl., ¶¶ 4-6; ECF No. 25-1 at 7, 10. Plaintiff requested an MRI for his right

8

arm, but defendant Singh denied the request. ECF No. 25-3 at 8.

On November 19, 2018, per the request for services ("RFS") submitted by defendant Singh, Plaintiff was administered a steroid injection in his right shoulder. ECF No. 25-1 at 11-12.

On March 7, 2019, Plaintiff was seen by medical staff Bourne. Plaintiff informed Bourne that he continued to have chronic pain in his right shoulder. ECF No. 25-1 at 15.

**Defendant Singh's Second Evaluation of Plaintiff.** On March 26, 2019, Plaintiff was seen by defendant Singh for complaints of asthma and right shoulder pain. Plaintiff reported that he continued to experience pain in the right shoulder; that the pain was intermittent; that the pain was aggravated when he performed dips, pull-ups, and push-ups; and that he did not experience pain when at rest. Plaintiff also reported that the November 2018 steroid injection had failed to address the pain. Defendant Singh conducted a physical examination of Plaintiff's right arm, and noted that Plaintiff had normal range of motion, normal strength, no atrophy, and no tenderness on palpitation of the shoulder. Plaintiff did not report any impairment of his activities of daily living. Defendant Singh suggested physical therapy to treat the shoulder, but Plaintiff refused, stating that he had tried it in the past and it had been ineffective. Defendant Singh ordered an x-ray of the right shoulder and recommended that Plaintiff avoid exercises that exacerbated the pain, such as dips and pull-ups. ECF No. 25-1 at 13-14. Plaintiff requested an MRI for his right arm, but defendant Singh denied the request. ECF No. 25-3 at 8.

On April 4, 2019, an x-ray was taken of Plaintiff's right shoulder. The x-ray found no acute fracture, acute dislocation, or acute joint abnormality. ECF No. 25-1 at 16.

On April 24, 2019, Plaintiff was seen by Dr. Lam for a follow-up appointment. Plaintiff reported having recurrent discomfort pain in the right shoulder with increased pain when he tried to raise his right arm overhead. ECF No. 25-1 at 17. Dr. Lam observed no weakness or numbness in Plaintiff's right arm, forearm, or hand; and Plaintiff reported that he was able to maintain daily activities except that he could not do many push-ups due to the right shoulder pain. ECF No. 25-1 at 17.

In July 2019, Plaintiff injured his right index finger playing sports. Dr. Javate ordered an x-ray of the right hand, which took place on July 3, 2019. ECF No. 25-1 at 20.

**Defendant Singh's Third Evaluation of Plaintiff.** On July 15, 2019, Plaintiff was seen by defendant Singh for a follow-up regarding the July 3, 2019 x-ray. Plaintiff informed defendant Singh that he had sustained an injury in his right index finger while playing handball. The right index finger was swollen at the time of injury, but not at the time of the appointment. Plaintiff was able to make a fist but reported pain at his right MCP joint. Plaintiff requested physical therapy to address the stiffness, so defendant Singh ordered a course of physical therapy. Defendant Singh recommended that Plaintiff file a request for healthcare services (CDC Form 7362) if the stiffness and pain did not resolve over the next two weeks. Plaintiff did not report shoulder pain during this visit. Singh Decl., ¶ 9; ECF No. 25-1 at 19-20. Plaintiff requested an MRI for his right arm, but defendant Singh denied the request. ECF No. 25-3 at 8.

**Defendant Singh's Fourth Evaluation of Plaintiff.** On September 9, 2019, Plaintiff was seen by defendant Singh in response to his complaints of asthma and shoulder pain. Plaintiff reported having reinjured the shoulder approximately four weeks prior. Plaintiff reported that the shoulder pain was worsening, limiting his ability to exercise and waking him at night; and that most movement aggravated the pain, including sleeping on the right shoulder and abduction/flexion. Plaintiff reported still being able to independently complete his activities of daily living. Plaintiff stated that he was only taking pain medication as needed. Defendant Singh examined Plaintiff's right hand and noted that Plaintiff was not able to make a complete fist, though he could make an almost complete fist; that Plaintiff had mild stiffness in the second finger, the pain was mostly located along the second medial metacarpal; and that the area was non-tender. Defendant Singh diagnosed Plaintiff as having rotator cuff tendinitis with worsening and persistent right shoulder pain. Defendant Singh put in a request for an evaluation for orthopedic surgery, and prescribed Plaintiff 650 mg Tylenol and capsaicin cream for pain relief. ECF No. 25-1 at 21-24. Plaintiff requested an MRI for his right arm, but defendant Singh denied the request. ECF No. 25-3 at 8.

On September 10, 2019, SVSP doctor Bright denied the request for an evaluation for orthopedic surgery on the following grounds. Dr. Bright's review of Plaintiff's medical records indicated that he was functional, not only with activities of daily living, but also was performing

1    pull-ups and push-ups, and able to play sports, including playing handball with his right arm as
2    recently as July 2, 2019.  Dr. Bright concluded that, based on these findings, surgery was not
3    expected to improve Plaintiff's outcome.  Bright Decl. ¶ 11; ECF No. 25-1 at 24.
4    　　　　　On October 3, 2019, Plaintiff was seen by SVSP doctor Saravi in response to his complaint
5    of continuing pain in the right shoulder.  Plaintiff reported that he had a sharp and burning pain in
6    his right shoulder with a 9/10 intensity; that the pain sometimes radiated to the wrist; that the pain
7    often woke him up at night; and that his functional limitations included discomfort when lying on
8    his right side, difficulty showering, and difficulty with overhead movements.  Dr. Saravi noted
9    that Plaintiff had range of motion and strength deficits that were limiting his ability to carry out his
10   activities of daily living.  Dr. Saravi diagnosed Plaintiff as having tendinitis of the right rotator
11   cuff and recommended skilled physical therapy to address the issues.  Dr. Saravi noted that a
12   partial tear could not be ruled out.  Dr. Saravi requested an MRI for Plaintiff; and prescribed pain
13   medication and three sessions of physical therapy spaced one to three weeks apart.  ECF No. 25-1
14   at 25-27.  On October 7, 2019, Dr. Bright denied the request for an MRI because it did not meet
15   the InterQual criteria and requested that the provider resubmit the request after reviewing the
16   InterQual criteria for MRI.  ECF No. 25-1 at 28, 30; ECF No. 25-2 at 30.
17   　　　　　**Defendant Singh's Fifth Evaluation of Plaintiff.**  On November 5, 2019, Plaintiff was
18   seen by defendant Singh regarding the denied MRI.  Plaintiff reported that he could still exercise
19   but avoided doing certain activities such as dips.  After examining Plaintiff, Defendant Singh
20   concluded that he suspected that Plaintiff had tendinitis and that it was unlikely that Plaintiff had a
21   rotator cuff tear.  Based on this conclusion, defendant Singh denied Plaintiff's MRI request,
22   stating that the treatment plan would not change or be dependent on the MRI results.  Defendant
23   Singh prescribed continued physical therapy and a steroid injection if there were no improvement.
24   ECF No. 25-1 at 30-31.  Bright Decl. ¶ 13; ECF No. 25-3 at 8.  This was defendant Singh's last
25   encounter with Plaintiff.  After this date, another physician took over as Plaintiff's primary
26   physician.  Singh Decl. ¶ 4.
27   　　　　　Between June 7, 2019 and January 23, 2020, Plaintiff had eight physical therapy sessions
28   with physical therapist Boller.  ECF No. 25-1 at 33.  On January 23, 2020, Boller reported that

11

Plaintiff's functional mobility and self-management of his symptoms had improved, and that skilled physical therapy was no longer indicated. ECF No. 25-1 at 35, 32.

On April 20, 2020, Plaintiff was seen by doctor Nguyen to review his expired chrono for lifting restrictions and special cuffing. Plaintiff reported that he continued to feel pain in the right shoulder. Dr. Ngueyn told Plaintiff that he would consider ordering an MRI/CT for Plaintiff if Plaintiff met the InterQual criteria. ECF No. 25-1 at 32.

On April 21, 2020, physical therapist Boller examined Plaintiff's right shoulder. He reported that Plaintiff had improved range of motion immediately after joint mobilization of his shoulder, but the limitations on movement returned minutes later. Boller concluded that skilled physical therapy was not recommended to address these issues because Plaintiff's condition had not improved; recommended that Plaintiff's primary care physician consider more aggressive treatment before sending Plaintiff back to physical therapy; and recommended permanent waist chain chronos to decrease the healthcare costs of Plaintiff re-injuring himself during cuffing. ECF No.25-1 at 33-4.

On May 14, 2020, Plaintiff had a follow-up appointment with Dr. Nguyen. Dr. Nguyen diagnosed Plaintiff with tendinitis of the right rotator cuff. Dr. Nguyen put in a request for an MRI. The MRI was performed on May 14, 2020, and indicated a large full-thickness rotator cuff tear. ECF No. 25-1 at 35-38.

On September 9, 2020, Plaintiff was seen by outside orthopedic surgeon Dr. Lameer, who recommended a magnetic resonance arthrogram of the right shoulder, which was performed on November 12, 2020. ECF No. 25-1 at 40-41. The arthrogram indicated full-thickness tearing of the supraspinatus and infraspinatus tendon with associated retraction. ECF No. 25-1 at 41. On July 30, 2021, Dr. Lameer did surgery to repair the tear in the right rotator cuff. ECF No. 25-1 at 42. Despite the surgery, Plaintiff still suffers from right shoulder pain. ECF No. 25-1 at 43-47. In or around March 2023, an MRI arthrogram revealed a new, separate, full thickness tear of approximately 50% of the tendon of the supraspinatus at the Musculo-tendinous junction. ECF No. 25-1 at 44-47. Dr. Lameer administered a steroid injection on May 8, 2023.

**D.     Analysis**

Defendant Singh argues that she is entitled to summary judgment because the undisputed evidence shows that she affirmatively and appropriately responded to Plaintiff's medical needs, and that, at most, the evidence demonstrates a difference of opinion between herself and Plaintiff which does not rise to the level of a constitutional violation. *See generally* ECF No. 25.

Plaintiff opposes defendant Singh's summary judgment motion on the following grounds. Plaintiff disputes defendant Singh's claim that Plaintiff did not complain of right shoulder pain prior to September 11, 2018, stating that defendant Singh was aware that Plaintiff has had right shoulder pain since April 17, 2015 as reported in his medical file. ECF No. 29 at 2, 6, 7. Defendant Singh was aware that Plaintiff's shoulder pain was worsening and affecting his ability to complete activities of daily living, as reflected in the notes that defendant Singh made memorializing the September 9, 2019 examination of Plaintiff and in notes that Dr. Lam made memorializing his or her April 24, 2019 examination of Plaintiff. ECF No. 29 at 3, 8. Defendant Singh denied him medical care when she filed to resubmit the MRI request with the InterQual criteria. ECF No. 29 at 5. On September 19, 2019, Defendant Singh ignored the physical therapist when the physical therapist informed her that something was wrong with Plaintiff's right shoulder, and she also denied the physical therapist order for a sling. ECF No. 29 at 4-5, 11. It was clear that Plaintiff had a rotator cuff tear and needed an MRI, as two other doctors diagnosed Plaintiff with a rotator cuff tear and ordered an MRI. ECF No. 29 at 5. Defendant Singh knew that what she was doing was wrong and she chose to do wrong, as shown in the attachments to Plaintiff's opposition. ECF No. 29 at 4. The more Plaintiff told defendant Singh what the issue was, the more agitated defendant Singh became. ECF No. 29 at 4. Dr. Bright is giving misleading statements. ECF No. 29 at 3. Plaintiff argues that his medical records support his allegations, and has attached as supporting exhibits the following medical records: his April 2, 2019 right shoulder x-ray report; the progress notes from Dr. Lam's April 24, 2019 examination, from defendant Singh's examinations on September 11, 2018, and on September 9 and November 5, 2019, and from Dr. Saravi's October 3, 2019 examination; defendant Singh's September 9, 2019 request for an orthopedic surgery evaluation for Plaintiff, and Dr. Bright's September 10, 2019 denial; Dr. Saravi's October 3, 2019 request for an MRI, and Dr. Bright's October 7, 2019 denial; the June

13

1   11, 2020 MRI report; the July 31, 2019 and April 21, 2020 physical therapy assessment from Peter
2   Boller; the November 12, 2020 MRI with contrast of Plaintiff's right shoulder; a November 17,
3   2021 Request for Healthcare Services expressing concern that his right shoulder was not healing
4   correctly; a summary of his April 17, 2023 appointment with orthopedic surgeon Lameer; and
5   patient education materials titled "Surgery for Rotator Cuff Tear with Rehab." *See generally* ECF
6   No. 25.

The Court has carefully reviewed the record and the parties' pleadings. Viewing the record in the light most favorable to Plaintiff, the Court finds that the record shows that defendant Singh took reasonable steps to abate the serious risk of physical harm posed by the pain in Plaintiff's right shoulder. The record indicates that defendant Singh's treatment at each appointment was a reasonable response to Plaintiff's medical condition at that time. Plaintiff's condition worsened over time and defendant Singh adjusted Plaintiff's treatment accordingly.

At defendant Singh's first evaluation of Plaintiff on September 11, 2018, Plaintiff reported general pain but also the ability to do jumping jacks and pull-ups for an hour daily. A physical examination indicated normal range of motion, no tenderness, and the ability raise his right arm 180 degrees. Defendant Singh reasonably diagnosed Plaintiff with right shoulder tendinitis and ordered Plaintiff the steroid shot he requested. Plaintiff has not provided evidence from which it can be reasonably inferred that defendant Singh acted unreasonably on September 11, 2018, in diagnosing Plaintiff with right shoulder tendinitis and not ordering an MRI, based on the symptoms reported and the examination conducted.

At defendant Singh's second evaluation of Plaintiff on March 26, 2019, six months after the first evaluation, Plaintiff reported intermittent pain aggravated by dips, pull-ups and push-ups. But Plaintiff also reported that there was no impairment of activities of daily living and no pain while he was at rest. A physical examination showed that Plaintiff's right arm had normal range of month, normal strength, no atrophy, and no tenderness on palpation. Defendant Singh reasonably diagnosed Plaintiff with right shoulder tendinitis, recommended that Plaintiff avoid exercises that exacerbated the pain, and ordered an X-ray. Plaintiff was seen one month later by Dr. Lam, whose examination of Plaintiff confirmed that he still had no weakness in his right arm

14

1  at that time. Plaintiff self-reported to Dr. Lam that he was still able to continue his activities of
2  daily living. Plaintiff has not provided evidence from which it can be reasonably inferred that
3  defendant Singh acted unreasonably on March 26, 2019, in diagnosing Plaintiff with right
4  shoulder tendinitis and not ordering an MRI, based on the symptoms reported, the examination
5  conducted, and Dr. Lam's assessment a month later.

6        At defendant Singh's third evaluation of Plaintiff on July 15, 2019, nearly three months
7  after the second appointment, Plaintiff did not report shoulder pain but reported stiffness from
8  injuring his right index finger while playing sports. Defendant Singh ordered the requested
9  physical therapy. Plaintiff has not provided evidence from which it can be reasonably inferred that
10 defendant Singh acted unreasonably on July 15, 2019, in not ordering an MRI and ordering the
11 physical therapy requested by Plaintiff, based on the symptoms reported and the examination
12 conducted.

13       At defendant Singh's fourth evaluation of Plaintiff on September 9, 2019, nearly two
14 months after the third appointment, defendant Singh noticed that Plaintiff's symptoms had
15 worsened significantly and put in a request for an orthopedic surgery evaluation. Defendant Singh
16 denied Plaintiff's request for an MRI. Defendant Singh also declined to follow the physical
17 therapist's recommendation for a sling because she believed that the sling would result in stiffness
18 and decrease range of motion in the shoulder. Defendant Singh again diagnosed Plaintiff with
19 tendinitis of the right shoulder cuff. The orthopedic surgery evaluation request was denied by Dr.
20 Bright on the grounds that surgery was not expected to improve Plaintiff's outcome given that
21 Plaintiff's medical records indicated that he was functional with activities of daily living and also
22 able to play sports and do pull-ups and push-ups. Plaintiff's argument is that he should have been
23 given an MRI sooner so that the rotator cuff tear would have been discovered, and surgery
24 conducted sooner. Although defendant Singh did not order the requested MRI, she did order him
25 a consult for the outcome which he ultimately sought – surgical intervention. Moreover, the
26 record indicates that there was a difference of medical opinion as to (1) what was wrong with
27 Plaintiff's shoulder, with defendant Singh diagnosing tendinitis in September 2019 and concluding
28 that it was unlikely a rotator cuff tear, and Dr. Saravi stating in October 2019 that a partial tear

15

could not be ruled out; and (2) what was the appropriate treatment for Plaintiff's right shoulder, with defendant Singh believing that surgical intervention might be necessary, Dr. Bright disagreeing with the need for surgical evaluation, and Dr. Saravi ordering an MRI in October 2019. The fact that prison medical authorities disagreed as to the best course of treatment further supports the conclusion that defendant Singh did not err or act unreasonably in concluding that Plaintiff had right shoulder tendinitis and did not need an MRI. In any event, as a matter of law, Plaintiff's disagreement with the defendant Singh's medical opinion as to the best course of treatment does give rise to a Section 1983 claim. *Franklin*, 662 F.2d at 1344.

At defendant Singh's fifth evaluation of Plaintiff on November 5, 2019, defendant Singh again diagnosed Plaintiff with tendinitis and recommended continued physical therapy and a steroid injection if there were no improvement. Defendant Singh opined that it was unlikely that he had rotator cuff tear and that an MRI was therefore unnecessary as it would not change the treatment plan. That defendant Singh was wrong about whether Plaintiff had a rotator cuff tear and about whether an MRI was needed does not create a triable issue of fact as to whether defendant Singh's treatment decisions at the November 5, 2019 examination violated the Eighth Amendment. "In order to know of [an] excessive risk, it is not enough that the person merely 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, [ ] he must also draw that inference.'" *Gibson*, 290 F.3d at 1188. There is nothing in the record from which it can be reasonably inferred that defendant Singh knew that Plaintiff had a rotator cuff tear and needed an MRI. A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. *See Toguchi*, 391 F.3d at 1060-61. Moreover, other medical professionals made similar assessments around that time period. On January 23, 2020, the physical therapist concluded that physical therapy had been effective in that it had improved Plaintiff's functional mobility and self-management of his symptoms. On April 20, 2020, Dr. Nguyen also declined to order an MRI for Plaintiff unless he met the InterQual criteria.

Plaintiff's arguments do not create a triable issue of material fact as to whether defendant Singh violated the Eighth Amendment. Plaintiff fails to acknowledge that his condition when he first saw defendant Singh was markedly different from when he last saw defendant Singh. The

appropriate medical treatment as of his final meeting with defendant Singh when his right arm/shoulder was causing him severe pain and affecting his daily life was not necessarily the appropriate medical treatment to be prescribed for Plaintiff at his first meeting with defendant Singh when the pain was present but did not prevent Plaintiff for daily vigorous exercise. And the medical reports indicate that defendant Singh provided Plaintiff with medical treatment for his right shoulder – steroid injection, x-ray, physical therapy, request for surgical evaluation – even if it was not the requested MRI. Moreover, Dr. Bright reports that community standards favor conservative therapies such as physical therapy and anti-inflammatory and pain medications as the initial treatment plan for rotator cuff tears, ECF No. 25-2 at 6, which is what defendant Singh prescribed, albeit for what she believed to be tendinitis. Plaintiff has not provided any evidence from which it can be reasonably inferred that defendant Singh knew that (1) Plaintiff had a rotator cuff tear; or that (2) the treatments that defendant Singh prescribed – steroid injection, x-ray, physical therapy, request for surgical evaluation – were not reasonable steps to abate the substantial risk of serious harm that Plaintiff faced from his right shoulder pain, given the symptoms he reported. In other words, Plaintiff has not demonstrated a triable issue of fact as to whether defendant Singh drew the inference that Plaintiff faced a substantial risk of serious harm from the treatment she prescribed. Accordingly, there is no triable issue of fact as to whether defendant Singh violated the Eighth Amendment. *Gibson*, 290 F.3d at 1118. The Court GRANTS defendant Singh's motion for summary judgment.

### E. Qualified Immunity

Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability who perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). To determine whether an officer is entitled to qualified immunity, the Court must consider whether (1) the officer's conduct violated a constitutional

right, and (2) that right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232. Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Because there was no violation of Plaintiff's constitutional rights, as explained above, there is no necessity for further inquiry concerning qualified immunity. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's requests for injunctive relief, ECF Nos. 32, 25; denies Plaintiff's request for leave to file an amended complaint, ECF No. 36; and grants Defendant's motion for summary judgment, ECF No. 25.

This order terminates ECF Nos. 25, 32, 35, 36.

**IT IS SO ORDERED.**

Dated: February 20, 2024

JON S. TIGAR
United States District Judge